UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,      )
                               )        2:11-CV-01394-PMP-VCF
            Plaintiff/Appellee,)        2:10-MJ-00196-LRL
                               )
 v.                            )
                               )        <u>OPINION</u>
CAMERON K. REED,               )
                               )
            Defendant/Appellant.)
_____)

        Presently before the Court is Appellant Cameron K. Reed's ("Reed") appeal of
the Magistrate Judge's denial of his Motion to Dismiss Counts Five and Six of the
Amended Complaint.  Specifically, Reed challenges the Magistrate Judge's conclusion that
the Assimilative Crimes Act ("ACA"), which incorporates state criminal law when a crime
occurs on federal land, assimilates two provisions of Nevada state law, which criminalize
driving with certain levels of marijuana or marijuana metabolite in the blood.

**I.  BACKGROUND**

        The facts are not in dispute for purposes of this appeal.  On March 27, 2010,
while on routine patrol within the Lake Mead National Recreation Area, National Park
Service ("NPS") Ranger Kenneth Barend ("Ranger Barend") observed a Chevrolet traveling
at a high rate of speed.  (ER 13-17, 22.)  Ranger Barend paced the vehicle at 40 miles per
hour in a posted 15 miles per hour zone and watched the Chevrolet turn into the exit of a
one-way loop, passing two "Do Not Enter" signs.  (ER 14, 22.)  After initiating a traffic
stop, Ranger Barend identified the driver as Reed.  (ER 14-15, 22.)

1    Ranger Barend smelled "a strong odor of burnt marijuana emanating from the
2  vehicle" and saw an open container of "Mikes Hard Lemonade" in the center console.  (ER
3  22.)  Reed's speech was slurred and he "admitted to smoking one marijuana joint and to
4  drinking a 'sip' of alcohol while driving."  (Id.)  Ranger Barend administered Field Sobriety
5  Tests to Reed.  (ER 15-16, 22-23.)  Reed failed three of four Field Sobriety Tests, passing
6  the preliminary breath test with 0.00 percent blood alcohol in his system.  (Id.)  Ranger
7  Barend determined Reed had been operating a motor vehicle in violation of 36 C.F.R.
8  § 4.23(a)(1) (the "federal impairment regulation"), which prohibits a person from operating
9  a motor vehicle while under the influence of alcohol or drugs "to a degree that renders the
10  operator incapable of safe operation." (ER 16.)  Ranger Barend arrested Reed.  (Id.)

11    Ranger Barend searched Reed's vehicle and found on the front passenger
12  floorboard a "Kool" cigarette box containing 2.2 grams of a substance that Ranger Barend
13  suspected to be marijuana.  (ER 23.)  Ranger Barend transported Reed to the North Las
14  Vegas Detention Center where a sample of Reed's blood was acquired.  (Id.)  A Las Vegas
15  Metropolitan Police Department Forensic Scientist identified 3.7 ng/ml of Δ9-
16  tetrahydrocannabinol (marijuana) and 15 ng/ml THC carboxylic acid (marijuana metabolite)
17  in Reed's blood.  (Id.)  Reed's blood did not contain any concentration of alcohol.  (Id.)
18  The substance from the "Kool" cigarette box found in Reed's car was identified as 1.33
19  grams of marijuana.  (ER 23-24.)

20    On March 29, 2010, the United States filed a four-count Complaint against Reed
21  in this Court, which was amended on October 12, 2010.  (ER 8-11, 19-24.)  In the original
22  Complaint, Reed was charged with operating a motor vehicle under the influence of drugs
23  and/or alcohol in violation of 36 C.F.R. § 4.23(a)(1) (Count One), unsafe operation in
24  violation of 36 C.F.R. § 4.22(b)(1) (Count Two), possession of a controlled substance in
25  violation of 36 C.F.R. § 2.35(b)(2) (Count Three), and open container in violation of 36
26  C.F.R. § 4.14(b) (Count Four).  (ER 8-11.)  The Amended Complaint charged Reed with

two additional counts:  operating a motor vehicle with an amount of marijuana in his blood

in violation of Nevada Revised Statutes § 484C.110(3)(g) (Count Five) and operating a

motor vehicle with an amount of marijuana metabolite in his blood in violation of Nevada

Revised Statutes § 484C.110(3)(h)[1] (Count Six).  (ER 21.)

Under Nevada's prohibited substance statute, operating a motor vehicle with a

threshold amount of a certain drug in one's system is a per se driving under the influence

violation.  See Nev. Rev. Stat. § 484C.110(3).  Section 484C.110(3)(g) (the "Nevada per se

marijuana statute") prohibits a person from driving a vehicle with marijuana in his or her

blood that is equal to or greater than 2 blood nanograms per milliliter.  Section

484C.110(3)(h) (the "Nevada per se marijuana metabolite statute") prohibits a person from

driving a vehicle with marijuana metabolite in his or her blood that is equal to or greater

than 5 blood nanograms per milliliter.  The Government charged Reed with these state law

crimes by using the ACA to incorporate the Nevada per se statutes to cover Reed's conduct

at the Lake Mead National Recreation Area.

Reed filed a Motion to Dismiss Counts Five and Six of the Amended Complaint,

arguing the Nevada per se statutes should not be assimilated under the ACA.  (ER 25-41.)

The Magistrate Judge denied Reed's Motion, concluding that because no federal regulation

prohibited the conduct of operating a motor vehicle with a certain level of drugs in a

person's blood, the ACA would assimilate the Nevada per se statutes.  (ER 1-7.)  The

Magistrate Judge found a gap in federal law because although 36 C.F.R. § 4.23(a)(2) (the

"federal per se alcohol regulation") prohibits an individual from driving with a certain level

of alcohol in the blood, there is not a similar federal per se regulation regarding drugs.  (ER

6.)  By finding that the federal per se alcohol regulation is a separate and distinct offense

from the federal impairment regulation, the Magistrate Judge similarly concluded the

---

[1]  The Amended Complaint contained a typographical error in Count Six, incorrectly listing the statutory section as §484C.110(3)(g).

1   federal impairment regulation did not punish the same conduct as the Nevada per se

2   marijuana statute because the two were distinct offenses.  (Id.)  Because the Magistrate

3   Judge concluded that neither the Nevada per se marijuana statute nor the Nevada per se

4   marijuana metabolite statute were covered by the federal impairment regulation, the ACA

5   assimilated the two statutes.  (ER 7.)  The Magistrate Judge therefore denied Reed's Motion

6   to Dismiss Counts Five and Six of the Amended Complaint.  (Id.)

7           Reed then entered into a conditional Petty Offense Agreement, agreeing to plead

8   guilty to Count Two (Unsafe Operation) and Count Five (Operating a Motor Vehicle with

9   Prohibited Substance in Blood).  (ER 118-19.)  While the initial plea agreement reserved

10  Reed's right to appeal both Counts Five and Six, at his plea hearing Reed waived his right

11  to appeal Count Six.  (ER 121, 127-28.)

12          Reed now appeals.  Reed contends the Magistrate Judge erred in assimilating the

13  Nevada per se marijuana statute and the Nevada per se marijuana metabolite statute.  Reed

14  asserts the Nevada statutes cover the same core criminal conduct as the federal impairment

15  regulation, which Reed originally was charged with under Count One.  Reed argues the

16  Nevada per se marijuana statute merely provides another way to establish impairment

17  instead of creating a new crime.  Reed contends there is no gap in federal substantive

18  criminal law for Nevada law to fill because the per se statutes are evidentiary provisions,

19  and the ACA does not allow for assimilation of evidentiary provisions.

20          Moreover, Reed argues that assimilation is precluded because the Department of

21  the Interior ("DOI") intended to occupy the field of criminalizing driving under the

22  influence on federal property.  Reed asserts that the NPS regulations punish those who drive

23  with a per se limit of alcohol, but omit a regulation punishing those who drive with a per se

24  limit of drugs because the DOI intentionally opted not to punish those who drive with per se

25  limits of drugs.  Finally, in regards to Count Six, Reed argues that the per se marijuana

26  metabolite statute is an unconstitutional status offense because the statute outlaws

marijuana addict or user status.

The Government responds that no federal enactment punishes the conduct of operating a motor vehicle with a per se level of marijuana.  The Government argues that because the distinctions between the federal impairment regulation and the Nevada per se marijuana statute include major elemental and proof differences, the two provisions punish different conduct.  The Government contends that the presence of a federal per se blood alcohol content regulation in the same section as the federal impairment regulation further demonstrates that the NPS considered the impairment charge to be a separate and distinct offense from the per se alcohol charge.  Additionally, the Government asserts that legislative commentary shows the NPS considers the alcohol per se regulation a separate offense and not a different mode of proving impairment.  The Government argues that because the two are separate offenses, there is a gap in federal criminal law which properly is filled by borrowing the state law.

Alternatively, the Government argues that even if the federal impairment regulation punishes Reed's conduct, application of the Nevada per se marijuana statute and marijuana metabolite statute is not precluded.  The Government contends that the NPS did not intend to exclude application of the Nevada statutes.  Finally, the Government contends that the constitutionality of operating a motor vehicle with marijuana metabolite in Reed's blood is moot because Reed waived his right to appeal the Magistrate Judge's decision as to Count Six.

**II.  DISCUSSION**

The Court "review[s] de novo whether the ACA assimilates a state law crime." United States v. Dotson, 615 F.3d 1162, 1165 (9th Cir. 2010).  Congress enacted the ACA to borrow "state law to fill gaps in the federal criminal law" on federal property.  Lewis v. United States, 523 U.S. 155, 160 (1998).  The ACA states, in relevant part, that:

///

1
2
3

> Whoever within . . . [the jurisdiction of] the United States . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated . . . shall be guilty of a like offense and subject to a like punishment.

4   18 U.S.C. § 13(a).  The ACA promotes uniformity through the "even-handed application of

5   state law to local conduct" by ensuring that a state's laws are uniformly applied, on and off

6   federal land.  United States v. Waites, 198 F.3d 1123, 1127 (9th Cir. 2000).

7         To determine whether a state criminal law is properly assimilated under the ACA,

8   the Court employs a two-part test.  Lewis, 523 U.S. at 164-65; United States v. Souza, 392

9   F.3d 1050, 1052-53 (9th Cir. 2004).  First, the Court inquires whether the "defendant's 'act

10  or omission [is] made punishable by any enactment of Congress.'"  Lewis, 523 U.S. at 164

11  (quoting 18 U.S.C. § 13(a)) (emphasis omitted).  Second, if there is an enactment of

12  Congress that punishes the defendant's conduct, the Court further inquires whether the

13  applicable federal enactment precludes the application of the state law in question.  Id.  An

14  "enactment of Congress" under the ACA encompasses federal regulations as well as

15  statutes.  See Waites, 198 F.3d at 1128.

16  **A.  Punishable by an Enactment of Congress**

17        To determine whether a federal enactment punishes the defendant's act or

18  omission, the Court compares the defendant's conduct with federal law.  See United States

19  v. Rocha, 598 F.3d 1144, 1148-49 (9th Cir. 2010) (finding that one or more provisions of

20  the federal assault statute punished the defendant's bodily contact with a fellow inmate);

21  Souza, 392 F.3d at 1053-54 (holding that several federal enactments could cover the

22  defendant's conduct of forcefully entering and removing articles from a parked vehicle:  18

23  U.S.C. § 661 and 36 C.F.R. § 2.30(a)(1) punished stealing and carrying away items from the

24  van and 36 C.F.R. § 2.31(a)(2) punished the unauthorized entry into the vehicle and

25  manipulation of the contents inside the vehicle); Waites, 198 F.3d at 1128 (concluding that

26  the defendant's failure to comply with the postmaster's request to not sleep in the post

office was punishable by 39 C.F.R. § 232.1(d)).  However, the Court "do[es] not inquire into whether every conceivable charge against [the] defendant is covered," but rather asks whether any federal law covers the defendant's conduct.  Rocha, 598 F.3d at 1149 (emphasis omitted).  For example, in Rocha the Court held that the federal assault statute covered the defendant's bodily contact with the victim in a penitentiary brawl even though the federal assault statute did not "fully cover [the defendant's] conduct" based on the "quantum of force involved in the attack" as the California assault statute would have done. Id. (emphasis omitted).  If there is no federal enactment that punishes the defendant's conduct, the ACA will "presumably . . . assimilate the statute" because a gap in federal law would exist for the state law to fill.  Lewis, 523 U.S. at 164.

### B. Federal Law Preclusion

Even if a defendant's conduct is made punishable by an enactment of Congress, state law still may be assimilated under the ACA if the Court determines that Congress did not intend to preclude application of the state statute.  Id. at 164-66.  The ACA will not assimilate state law where "both state and federal statutes seek to punish approximately the same wrongful behavior—where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment."  Id. at 165.  "Where the state and federal statutes punish approximately the same behavior," the federal statute typically precludes assimilation because "the intent to exclude application of state law is obvious," as there is no gap in federal law for the state law to fill.  Waites, 198 F.3d at 1129.

To determine if there is a gap in federal law, the Court must compare the applicable federal law with the state statute in question.  See Souza, 392 F.3d at 1055 ("After comparing the Hawaii [] statute with the general federal enactments, we conclude that there is a substantial difference in the kind of wrongful behavior covered which indicates the presence of a gap in federal law that the Hawaii statute properly fills under the

ACA.") (internal citation and quotation marks omitted); Waites, 198 F.3d at 1129 (concluding the ACA did not assimilate a state statute that punished approximately the same wrongful behavior as a federal regulation because it "would attempt to fill a gap in the federal enclave law where no gap exists").  In addition, the Court considers if assimilating the state law would (1) "interfere with the achievement of a federal policy," (2) "effectively rewrite an offense definition that Congress carefully considered," or (3) frustrate congressional intent to "occupy so much of a field as would exclude use of the particular state statute at issue."  Lewis, 523 U.S. at 164-65.  The preclusion question hinges primarily on whether federal law manifests the intent to punish the conduct at issue "to the exclusion of" the state law.  Id. at 166.

### C.  Assimilation as Applied to Nevada Law

The federal impairment regulation punishes operating a motor vehicle while under the influence of alcohol or drugs "to a degree that renders the operator incapable of safe operation."  36 C.F.R. § 4.23(a)(1).  A violation of the federal impairment regulation can be established through evidence such as "descriptions of observations made by the arresting officer and witnesses, physical evidence and the results of the field tests conducted by the officer at the scene."  Vehicles & Traffic Safety, 52 Fed. Reg. 10,670, 10,680 (Apr. 2, 1987).  "The results of chemical and other quantitative tests conducted may be used to supplement the other items of evidence."  Id.

Comparing Reed's conduct with the federal impairment regulation, Reed was driving his car in an unsafe manner while under the influence of drugs and/or alcohol.  Reed drove 40 miles per hour in a 15 miles per hour zone, entered the exit of a one-way loop, and passed two "Do Not Enter" signs.  Reed had slurred speech and failed three Field Sobriety Tests.  Reed admitted taking a sip of alcohol and smoking marijuana before driving.  When Ranger Barend searched Reed's vehicle, he found an open container of "Mikes Hard Lemonade" and 1.33 grams of marijuana.  Reed's blood contained 3.7 ng/ml of marijuana.

The federal impairment regulation punishes this conduct.  Indeed, Count One of the Amended Complaint charged Reed with violating the federal impairment regulation for this very conduct.

Although Reed's conduct is punishable by the federal impairment regulation, assimilation nonetheless is appropriate because Congress did not intend to preclude application of the Nevada per se marijuana statute.  The federal impairment regulation and the Nevada per se marijuana statute punish two different forms of behavior.  The Nevada per se marijuana statute punishes operating a motor vehicle while having a threshold level of marijuana in the blood.  Impairment is not an element of the Nevada per se marijuana statute.  Williams v. State, 50 P.3d 1116, 1124 (Nev. 2002).  On the other hand, the federal impairment regulation is a general impairment provision that punishes the activity of operating a motor vehicle while impaired, but no specific level of drugs must be found in the person's system to convict a person under this regulation.  The federal impairment regulation does not specifically cover the conduct of driving with a certain level of drugs in the blood regardless of impairment.  Thus, there is a gap in federal law because the federal regulation and the Nevada per se marijuana statute do not punish the same behavior.  See, e.g., Souza, 392 F.3d at 1054 (finding that the federal enactments for trespassing and theft did not specifically cover the combination of breaking, entering, and taking something from a motor vehicle).

None of the three reasons for precluding assimilation of state law apply.  First, the absence of a federal per se marijuana regulation does not suggest that the Nevada per se marijuana statute is contrary to federal policy.  Rather, the DOI enacted a non-abrogation principle expressly stating that for areas under the NPS's jurisdiction, the NPS looks to the traffic laws of the state in which the national park is located.  36 C.F.R. § 4.2(a) (the "non-abrogation clause").  The non-abrogation clause in § 4.2(a) "reflects the fact that NPS considers the respective States to be the appropriate authorities to regulate traffic, and relies

heavily on the assimilation of" state traffic and vehicular laws that are not already provided for in the federal regulations.  Vehicles & Traffic Safety, 51 Fed. Reg. 21,840, 21,840 (proposed June 16, 1986).  Thus, assimilating the Nevada per se marijuana statute furthers the NPS's policy of adopting state traffic laws in national parks.

The absence of a federal per se marijuana regulation does not necessarily indicate that Congress purposefully excluded such a provision as contrary to federal policy.  It could reflect that neither the NPS nor Congress have yet considered promulgating a new rule in this area.  When the NPS adopted its per se alcohol regulation in 1987, Nevada had not yet enacted a per se marijuana statute.  Vehicles & Traffic Safety, 52 Fed. Reg. at 10,683.  It was not until 1999 that Nevada promulgated its per se marijuana statute.  Williams, 50 P.3d at 1121.  Additionally, when Nevada promulgated its per se marijuana statute, only nine states had enacted per se drug statutes.  Id. at 1120-21 & n.15.  Because only a minority of states had adopted per se drug provisions, the NPS might have chosen to leave a gap to be filled by these states' traffic laws.

Additionally, nothing in the legislative history from when the federal impairment regulation was proposed, adopted, or amended suggests that the NPS opted to treat impaired driving the same as driving with a per se amount of drugs in the driver's system.  See Operating Under the Influence of Alcohol or Drugs, 68 Fed. Reg. 46,477, 46,477-79 (Aug. 6, 2003); Vehicles & Traffic Safety, 52 Fed. Reg. at 10,680-81; Vehicles & Traffic Safety, 51 Fed. Reg. at 21,840-44.  As a result, there is no evidence the NPS intended the federal impairment regulation to apply "to the exclusion of" the Nevada per se marijuana statute.  Finally, the Nevada per se marijuana statute is in conformity with and supportive of the federal policy regarding criminalizing the possession of controlled substances in national parks.  See 36 C.F.R. § 2.35(b)(2) (prohibiting the possession of any amount of controlled substance unless it was legally obtained by the possessor directly, or pursuant to a valid prescription, from a practitioner); Id. § 1.4(a) (defining "controlled substance" as a drug

included in the Controlled Substance Act); 21 U.S.C. § 812(c) sched. I(c)(17) (designating

tetrahydrocannabinols (marijuana) as a Schedule I controlled substance).

Second, assimilation is appropriate because the Nevada law does not effectively

rewrite an offense definition carefully considered by Congress.  As discussed above, the

federal impairment regulation does not cover the same type of conduct as the Nevada per se

marijuana statute.  The per se marijuana statute does not incorporate more onerous state law

sentencing schemes, regulatory requirements, or evidentiary rules for the conduct covered

under the federal impairment regulation.  See Rocha, 598 F.3d at 1152 (comparing the

federal assault statute with the California assault statute and concluding that because the

maximum term of imprisonment under the state statute was longer than the federal statute,

assimilating the state statute effectively would rewrite Congress' sentences and authorize a

longer punishment for the same wrongful behavior).  Thus, assimilation of the Nevada

marijuana per se statute would not rewrite a federal offense definition because assimilation

of the marijuana per se statute would not effect the application of the federal impairment

regulation.

Finally, assimilation is appropriate because Congress has not indicated an intent

to occupy the entire field of driving with a certain level of drugs in the blood.  The federal

impairment regulation is general in nature and does not categorize different levels of

impairment, set out different penalties for different categories of impairment, or cover the

same type of conduct as the Nevada per se marijuana statute.  Compare Souza, 392 F.3d at

1054 (concluding that "[b]ecause the federal enactments are general in nature and do not

address the specific conduct of burglary or unauthorized entry into a motor vehicle," they

did not occupy the field), with Rocha, 598 F.3d at 1150-51 (holding that Congress intended

to occupy the field of assault by enacting a comprehensive federal statute that specifically

covered the defendant's actions because Congress addressed "key policy questions," such

as designating harsher punishments when the victim is younger than sixteen years old and

11

when the assault is done with a murderous intent).  The Nevada per se marijuana statute

covers the specific conduct of driving with a threshold level of marijuana in the operator's

system.  Because the federal impairment regulation does not comprehensively regulate

Reed's conduct, Congress has not demonstrated an intent to occupy the field of driving with

a certain level of drugs in the blood.

Moreover, assimilation in this case furthers the ACA's goal of the uniform

application of state law to local conduct.  See Dotson, 615 F.3d at 1169-70.  Applying the

Nevada per se marijuana statute furthers uniformity between drivers in Lake Mead National

Recreation Area and drivers in Nevada, where the federal land is located.  As people drive

on and off federal land located in Nevada, they will be subject to the same traffic laws.

Further, Nevada's per se marijuana statute reflects the Nevada legislature's decision to

punish conduct that poses a threat to the general welfare of its citizens.  See Williams, 50

P.3d at 1120 (identifying "traffic safety" as a rational basis for the Nevada per se marijuana

statute); see also Dotson, 615 F.3d at 1169-70 (finding that the Washington statute

criminalizing furnishing alcohol to minors served a public safety purpose which supported

assimilating the Washington statute).  Failure to assimilate the Nevada per se marijuana

statute would circumvent the Nevada legislature's determination.

Therefore, even though the federal impairment regulation punishes Reed's

conduct, assimilation of the Nevada per se marijuana statute, Nevada Revised Statutes

§ 484C.110(3)(g), is not precluded and, in the interest of the uniform application of state

law, is assimilated under the ACA.  The Court therefore will affirm the Magistrate Judge's

decision denying Reed's Motion to Dismiss Count Five.

Because Reed did not reserve his right to appeal the denial of his Motion to

Dismiss Count Six, Reed's arguments as to Count Six regarding assimilation of the Nevada

per se marijuana metabolite statute are moot.  The Court therefore will not address those

arguments, including Reed's constitutional challenge to assimilation of Nevada Revised

Statutes § 484.110(3)(h).

**III.  CONCLUSION**

       The Magistrate Judge's decision denying Appellant Cameron K. Reed's Motion to Dismiss Count Five is hereby AFFIRMED.


DATED:  July 23, 2012

_____
PHILIP M. PRO
United States District Judge